# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TRAINCROFT, INC., | )<br>)<br>) |
|     Plaintiff and<br>    Counterclaim-Defendant, | )<br>)<br>) |
|     v. | )<br>) |
| THE INSURANCE COMPANY OF THE<br>STATE OF PENNSYLVANIA, | )<br>)<br>) |
|     Defendants and Counterclaim-<br>    Plaintiff, | )<br>)<br>) |
| and | )<br>) |
| NORMAN SPENCER MCKERNAN, INC.,<br>and JENNIFER PORTER, | )<br>)<br>) |
|     Defendants. | )<br>) |

Civil No.
14-10551-FDS

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE

**SAYLOR, J.**

This is a dispute as to the payment of premiums for workers' compensation insurance policies. Jurisdiction is based on diversity of citizenship.

Plaintiff Traincroft, Inc., purchased workers' compensation insurance policies underwritten by defendant The Insurance Company of the State[1] of Pennsylvania ("ICSP") and brokered by defendants Norman Spencer McKernan, Inc. ("NSM") and Jennifer Porter. Traincroft alleges that defendants provided insurance quotes based on outdated classification

---

[1] Notwithstanding the corporate name, Pennsylvania, like Massachusetts, is a "commonwealth" rather than a "state."

codes, thereby artificially lowering the estimated insurance premiums and inducing Traincroft to purchase from them rather than their competitors. ICSP later audited Traincroft and sought payment of additional premiums, based on the appropriate classification codes. Traincroft filed a complaint in state court requesting a declaratory judgment that it does not owe additional premiums, that ICSP violated Mass. Gen. Laws ch. 93A, and that NSM and Porter were negligent and committed professional malpractice.

Defendant ICSP removed the action to this Court and moved to dismiss the complaint for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted. ICSP also filed a counterclaim, alleging breach of contract and unjust enrichment and seeking payment of the additional assessed premiums, and moved to strike plaintiff's answer to the counterclaim.

For the reasons set forth below, the motion to strike will be denied and the motion to dismiss will be denied.

**I.     Background**

Except where otherwise noted, the facts are presented as stated in the complaint.

The Insurance Company of the State of Pennsylvania is a Pennsylvania corporation with its principal place of business in New York. Norman Spencer McKernan, Inc., is an insurance broker; it is a Pennsylvania corporation with its principal place of business in Pennsylvania. Jennifer Porter, a citizen of Pennsylvania, is an insurance broker who works for NSM.

Traincroft, Inc., is a Massachusetts corporation that provides outsourcing, engineering, and technical services. Traincroft sought the assistance of NSM and Porter in purchasing four workers' compensation insurance policies to cover its workers in Pennsylvania. Each year,

NSM and Porter obtained from the ICSP a quote to insure Traincroft for the next policy year. The quotes were based, in part, on classification codes set by the Pennsylvania Compensation Rating Bureau ("PCRB"). Traincroft accepted the policy each year by agreeing to the quote and paying the policy premium.

On October 25, 2010, the PCRB sent a letter to ICSP regarding a change in classification codes that affected temporary staffing businesses, such as Traincroft. (*See* Pl. Mem., Ex. A). The change was effective for new and renewal policies as of December 1, 2010. Traincroft renewed its policy on November 20, 2011, and again on November 20, 2012.

According to the complaint, ICSP did not change the classification codes for Traincroft's 2011 and 2012 renewal policies. It did not adjust the quoted premiums to reflect an increased price due to the classification change, and NSM and Porter likewise did not advise Traincroft of the effect of the change. Traincroft alleges that it relied on the quotes in deciding whether to continue purchasing insurance from ICSP or to seek insurance from another company.

In April 2013, ICSP conducted an audit of Traincroft's 2011 policy. In the summer of 2013, it informed Traincroft that it owed additional premiums totaling $182,499 based on the new classification codes.

According to Traincroft, on June 12 and June 28, 2013, it wrote to the Pennsylvania State Workers Insurance Fund and the PCRB requesting review of its classification in light of the audit. (Pl. Mem., Ex. B, C). The PCRB responded on July 26, 2013, stating in part that ICSP and Traincroft had provided timely notice of the new classification codes. (Pl. Mem., Ex. D). Traincroft then filed a complaint with the Pennsylvania Insurance Department on September 13, 2013, alleging that ICSP did not notify it of the classification change and attendant premium

3

increase and later sought unpaid premiums, in violation of the Pennsylvania Workers' Compensation Manual. (Pl. Mem., Ex. E). On October 2, 2013, ICSP responded, contending that it changed the classification codes and conducted the audits properly. (Pl. Mem., Ex. G). On October 24, 2013, the Pennsylvania Insurance Department informed Traincroft that it had not identified a violation of Pennsylvania insurance law. (Pl. Mem., Ex. H).

On February 6, 2014, Traincroft filed a complaint in Massachusetts state court against ICSP, NSM, and Porter. On March 6, 2014, ICSP removed the action to this Court, and on March 13, filed a motion to dismiss and a counterclaim. ICSP has moved to strike Traincroft's answer to its counterclaim.[2]

## II. Standard of Review

### A. Motion to Dismiss Under Fed. R. Civ. P. 12(b)(1)

Federal courts are courts of limited jurisdiction. They possess only those powers granted by either the Constitution or statute, and cannot adjudicate claims absent such power. *See, e.g.*, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Accordingly, the existence of subject-matter jurisdiction is never presumed. *Fafel v. DiPaola*, 399 F.3d 403, 410 (1st Cir. 2005). Rather, "the party invoking the jurisdiction of a federal court carries the burden of proving its existence." *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995).

In ruling on a motion brought under Fed. R. Civ. P. 12(b)(1), the court must credit the plaintiff's well-pleaded factual allegations and draw all reasonable inferences in its favor. *Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010). The court may also consider other

---

[2] On June 17, 2014, plaintiff moved for leave to file an amended complaint to add four additional defendants who allegedly acted as retail brokers for Traincroft. Plaintiff did not propose to alter any of the allegations against ICSP.

4

evidence, including depositions and exhibits submitted by either party. *Id.*

### B.     Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)

On a motion to dismiss for failure to state a claim upon which relief can be granted, the Court "must assume the truth of all well-plead[ed] facts and give plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if the well-pleaded facts of the complaint do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

## III.    Analysis

### A.     Motion to Strike

Defendant seeks to strike plaintiff's affirmative defenses to its counterclaim because they are "boilerplate"[3] and therefore fail to satisfy the pleading requirements of Fed. R. Civ. P. 8 as

---

[3] In whole, plaintiff lists its affirmative defenses as:

1. The Counterclaim fails to state a cause of action upon which relief can be granted.

2. The Insurance Company's claims are barred by the application of the doctrine of laches.

5

set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

As defendant notes, no federal court of appeals, including the First Circuit, has held that *Iqbal* and *Twombly* apply to pleading affirmative defenses. *See United States v. Conagra Grocery Products Co., LLC*, 2014 WL 971973, at *4 (D. Me. Mar. 12, 2014). District courts are divided on the question. *See Falley v. Friends Univ.*, 787 F.Supp.2d 1255, 1256-57 (D. Kan. 2011) (collecting cases). *Compare Kaufmann v. Prudential Ins. Co. of Am.*, 2009 WL 2449872, at *1 (D. Mass. Aug. 6, 2009) (Stearns, J.) (assuming, without deciding, "that a defendant has the same Rule 8 obligations with respect to notice pleading as does a plaintiff") *with Hansen v. Rhode Island's Only 24 Hour Truck & Auto Plaza, Inc.*, 287 F.R.D. 119, 122-23 (D. Mass. 2012)

---

3. The Insurance Company's claims are barred by the application of the doctrine of unclean hands.

4. The Insurance Company's claims are barred by the application of the doctrine of estoppel.

5. Plaintiff breached no duty owed to the Insurance Company.

6. The conduct of Plaintiff was reasonable, proper, and within its lawful authority.

7. The Insurance Company has not suffered injuries, damages, or other losses.

8. The Insurance Company's claims are barred, in whole or in part, by the terms and conditions of the applicable agreements.

9. Any harm sustained by The Insurance Company is the result of conduct of third parties over whom Plaintiff has no control.

10. The Insurance Company has failed to mitigate its damages, if any.

11. The Insurance Company's claims are barred because it consented to the conduct of which it now complains.

12. Plaintiff incorporates by reference the allegations set forth in the Complaint against the Insurance Company.

13. Plaintiff reserves the right to raise any other affirmative defenses.

(Pl. Answer, Dkt. No. 12).

(Gorton, J.) (refusing to impose heightened pleading standard for affirmative defenses).

Courts that have extended *Iqbal* and *Twombly* to defenses note the parallel structure of the requirement in Rule 8 that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief" and that a response to a pleading must "state in short and plain terms its defenses to each claim asserted against it." Fed. R. Civ. P. 8(a)(2), (b)(1)(A); *see Hayne v. Green Ford Sales, Inc.*, 263 F.R.D. 647, 650 (D. Kan. 2009). In contrast, other courts have noted that a pleading must "show" that the pleader is entitled, while a response only need "state" its defenses, suggesting that a lower bar applies to responses. *Hansen*, 287 F.R.D. at 122. Furthermore, one major rationale for heightened pleading is limiting the burden of discovery, to which affirmative defenses generally add little marginal cost. *Id.* at 122-23. And it might be unfair to require that defendants set forth within 21 days the same level of detail that plaintiffs have amassed during an entire limitations period. *Id.* at 123.[4]

The Court finds the latter view persuasive and therefore declines to extend the pleading standards described in *Iqbal* and *Twombly* to affirmative defenses. Accordingly, the motion to strike will be denied.

### B. Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)

#### 1. Failure to Exhaust Administrative Remedies

Defendant contends that this Court lacks subject-matter jurisdiction because plaintiff failed to exhaust its administrative remedies. Specifically, it argues that Massachusetts law requires that disputes concerning workers' compensation be submitted to the Massachusetts

---

[4] It is worth noting that in the one instance in which a district court in Massachusetts assumed that heightened pleading applied to affirmative defenses, that court refused to strike the defenses because they were among the defenses listed in Fed. R. Civ. P. 8(c). *See Kaufmann*, 2009 WL 2449872, at *1.

Insurance Commissioner. *See* Mass. Gen. Laws ch. 152.

Where there is an available and applicable administrative scheme established by the legislature, a Massachusetts state court lacks subject-matter jurisdiction to hear a case until the allegedly aggrieved party has exhausted those remedies. *Fleming v. Nat'l Union Fire Ins. Co.*, 445 Mass. 381, 382-83 (2005). However, a failure to exhaust state administrative remedies does not deprive a federal court of jurisdiction where jurisdiction otherwise exists. Instead, it may be cause to dismiss the action for failure to state a claim. *See Jorge v. Rumsfeld*, 404 F.3d 556 (1st Cir. 2005) (explaining that failure to exhaust is not jurisdictional but that "a plaintiff's unexcused failure to exhaust administrative remedies effectively bars the courthouse door"). Accordingly, the Court will evaluate defendant's claim under the framework of Fed. R. Civ. P. 12(b)(6).

Defendant contends that plaintiff failed to pursue and exhaust the procedures set forth in Mass. Gen. Laws ch. 152, § 52D. However—and even assuming that the Massachusetts regulatory scheme applies to a Pennsylvania policy issued to cover Pennsylvania workers—that argument is not supported by the language of the statute. As defendant notes, section 52D states that "any person aggrieved by the application of *its* rating system may be heard, in person or by his authorized representative, on his written request to review the manner in which such rating system has been applied in connection with the insurance afforded him." Mass. Gen. Laws ch. 152, § 52D (emphasis added). Defendant supplies for the word "its" the bracketed phrase "the Massachusetts Insurance Commissioner's." (Def. Mem. at 4). However, that paragraph of the statute addresses only rating organizations and insurers "which make its own rates." Mass. Gen. Laws ch. 152, § 52D. Therefore, the "its" properly refers to the rating of the rating organization or insurer. It does not appear that defendant does set its own rates; instead, for the insurance

policies at issue, it uses rates set by the PCRB.

Section 52D further provides procedures for members or subscribers of rating organizations to contest its decisions before the Commissioner of Insurance. But, plaintiff is neither a member nor a subscriber and therefore has no remedy under the provision.

In sum, the procedures set out in the second paragraph of section 52D are inapplicable here. The cases defendant cites do not hold otherwise. *See, e.g.*, *Fleming*, 445 Mass. at 383 (injured workers alleging unfair and deceptive settlement practices of insurers must utilize administrative workers' compensation framework); *Liab. Investigative Fund Effort, Inc. v. Med. Malpractice Joint Underwriting Ass'n of Massachusetts*, 409 Mass. 734, 750-51 (1991) (physicians challenging medical malpractice insurance rates must first pursue claim before Commissioner of Insurance). Nor does it appear that any other provision within chapter 152 so provide.

Defendant further asserts that plaintiff was required to exhaust the administrative remedies of the PCRB. Under Pennsylvania law, disputes between an insurer and an insured over the selection and application of rate classifications must first be heard by the PCRB. *Maryland Cas. Co. v. Odyssey Contracting Corp.*, 894 A.2d 750, 753 (Pa. Super. Ct. 2006). Plaintiff, in fact, submitted a complaint to the PCRB, which did not find any wrongdoing. (Pl. Mem., Exs. B, C, D). It then filed a complaint with the Pennsylvania Insurance Department, but does not appear to have pursued its administrative remedies by appealing the decision to the Appeals Subcommittee of the PCRB. *See Grimaud v. Pennsylvania Ins. Dep't*, 995 A.2d 391, 393 (Pa. Commw. Ct. 2010) (describing administrative process). In any event, plaintiff was not required to pursue its claim through the PCRB process.

9

The PCRB is a nongovernmental organization that creates "a system of risk classifications to be used in the computation of workmen's compensation insurance premium rates paid by employers." *Commonwealth Ins. Dep't v. Colonial Gardens Nursing Home*, 347 A.2d 770, 771 (Pa. Commw. Ct. 1975); *see Grimaud*, 995 A.2d at 410 (describing that the PCRB, not the courts, are empowered by statute to "choose one classification system over another"). "It is not an administrative body designed to adjudicate contract claims related to a workers' compensation policy." *Liberty Mut. Ins. Co. v. Muskin Leisure Products, Inc.*, 2007 WL 2407302, at *3 (M.D. Pa. Aug. 21, 2007) (citing *Maryland Casualty Co. v. Odyssey Contracting Corp.*, 894 A.2d 750, 755 (Pa. Super. Ct. 2006)).

The essence of the dispute here is whether defendant may retroactively charge plaintiff additional premiums. The parties do not disagree as to which rate applies to plaintiff's business but the manner in which defendant chose to apply the correct rate. While the action involves classification rates set by the PCRB, it does not implicate the expertise of the PCRB in calculating and assessing risks, nor does it call into question the rates themselves. Accordingly, plaintiff is not required to present the dispute to the PCRB, and the claims will not be dismissed for failure to exhaust.

## 2. **Declaratory Judgment Act**

Defendant challenges plaintiff's claim for declaratory judgment on the ground that no actual controversy exists because plaintiff has not paid any of the additional premiums demanded and therefore has suffered no loss. (Def. Mem. 7-8).

The complaint asserts the claim under the Massachusetts Declaratory Judgment Act, Mass. Gen. Laws. ch. 231A, § 1, which provides that courts may "make binding declarations of

right, duty, status and other legal relations sought thereby, either before or after a breach or violation thereof has occurred in any case in which an actual controversy has arisen." However, because the case has been removed to federal court and the present question of ripeness is procedural, whether this Court may grant a declaratory judgment must be reviewed under the standard of the federal Declaratory Judgment Act, 28 U.S.C. § 2201. *Tocci Bldg. Corp. of New Jersey, Inc. v. Virginia Sur. Co.*, 750 F. Supp. 2d 316, 320 n.2 (D. Mass. 2010) (evaluating a claim for declaratory judgment in a diversity action under the federal rather than the state act because "[a] declaratory judgment action is procedural only"); *Jensen v. Jensen*, 2011 WL 2174898, at *3 (D. Mass. June 3, 2011).[5] The federal Act provides that a federal court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201.

Under federal law, a claim for declaratory judgment must present an "actual case or controversy." *Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530, 535 (1st Cir. 1995). "The First Circuit has established a two-part ripeness inquiry" as to that question: whether the issue is "'fit for review'" and whether "'hardship looms.'" *Tocci Bldg. Corp.*, 750 F. Supp. 2d at 320-21 (quoting *Ernst & Young*, 45 F.3d at 535).

As to fitness for review, "the critical question . . . is whether the claim involves uncertain

---

[5] That said, matters of substantive law relating to the request for a declaratory judgment should be evaluated under state law. *See Commercial Union Ins. Co. v. Walbrook Ins. Co., Ltd.*, 41 F.3d 764, 772-75 (1st Cir. 1994) (construing the Massachusetts Declaratory Judgment Act and holding that "a district court sitting in diversity when it awards prejudgment interest pursuant to a declaratory judgment action must apply the law of the state in which the court sits"). Also, many federal district court judges have seemingly applied the state declaratory judgment act and attendant case law. *See, e.g.*, *LeBeau v. Town of Spencer*, 190 F. Supp. 2d 131, 137-38 (D. Mass. 2002); *Raytheon Co. v. Cont'l Cas. Co.*, 123 F. Supp. 2d 22, 30 (D. Mass. 2000); *Riverdale Enterprises, Inc. v. Shell Oil Co.*, 41 F. Supp. 2d 56, 63 (D. Mass. 1999); *State Mut. Life Assur. Co. of Am. v. Lumbermens Mut. Cas. Co.*, 874 F. Supp. 451, 452, 461 (D. Mass. 1995). In any event, for present purposes, the inquiry is essentially the same under the state and federal statutes.

11

and contingent events that may not occur as anticipated or may not occur at all." *Ernst & Young*, 45 F.3d at 536 (quoting *Mass. Ass'n of Afro-Am. Police, Inc. v. Boston Police Dep't*, 973 F.2d 18, 20 (1st Cir. 1992)). Here, there clearly is a dispute as to whether plaintiff owes defendant $182,499 in audit premiums. That fact is underlined by defendant's assertion of a counterclaim as to precisely the same question. Plaintiff need not pay the money and then sue to get it back to create an actual controversy or substantial injury. *See Carlton Hotel v. Abrams*, 322 Mass. 201, 202-03 (1948) (finding jurisdiction under Massachusetts Declaratory Judgment Act to hear dispute concerning attorney's demand of payment from client and client's assertion that it owed no payment). *Cf. Associated Indem. Corp. v. Fairchild Indus., Inc.*, 961 F.2d 32, 35 (2d Cir.1992) ("[L]itigation over insurance coverage has become the paradigm for asserting jurisdiction despite future contingencies that will determine whether a controversy ever actually becomes real" (internal quotation marks and citation omitted)).

As to hardship, "[t]he key question involves the usefulness of a declaratory judgment, that is, the extent to which the desired declaration 'would be of practical assistance in setting the underlying controversy to rest.'" *Ernst & Young*, 45 F.3d at 537 (quoting *Rhode Island v. Narragansett Indian Tribe*, 19 F.3d 685, 693 (1st Cir. 1994)). It is apparent that a ruling on plaintiff's obligation to pay defendant the audit premiums would resolve the dispute between them.

Accordingly, the motion to dismiss count 1 will be denied.

### 3. Chapter 93A

Plaintiff brings its second claim under the Massachusetts consumer-protection statute, Mass. Gen. Laws ch. 93A, § 11. The complaint essentially alleges that defendant's

misrepresentation of the insurance policy and knowing application of outdated classification codes constitutes an unfair and deceptive insurance practice prohibited by Mass. Gen. Laws ch. 176D, §§ 3(1), (2), (9). Defendant contends that the chapter 93A claim fails as a matter of law for three reasons.

First, defendant contends that plaintiff has not suffered any injury, in that it has not paid the audit premiums defendant seeks. "To prevail on a Chapter 93A claim, [a] plaintiff must prove that a person who engaged in trade or business committed an unfair or deceptive trade practice and that the [plaintiff] suffered a loss of money or property as a result." *Morris v. BAC Home Loans Serv., L.P.*, 775 F. Supp. 2d 255, 259 (D. Mass. 2011) (internal quotation and citation omitted). Plaintiff asserts that it has pleaded the chapter 93A claim in the alternative, as it is permitted to do. Fed. R. Civ. P. 8(d); *see Vieira v. First Am. Title Ins. Co.*, 668 F. Supp. 2d 282, 295 (D. Mass. 2009). The mere fact that it has challenged that debt before paying it does not render the injury ephemeral or unsubstantial; that is, defendant's demand for payment is a cognizable injury. *See Warner-Lambert Co. v. Execuquest Corp.*, 427 Mass. 46, 48 (1998). Accordingly, plaintiff has adequately pleaded injury under chapter 93A.

Second, defendant contends that plaintiff, as a business, cannot bring a claim for emotional distress under chapter 93A. That is true. However, given that plaintiff pleaded the cognizable injury of loss of money due to defendant's conduct, that argument is not ground for dismissal.

Third, and finally, defendant contends that the allegedly improper conduct does not fall within "the penumbra of some common-law, statutory, or other established concept of unfairness" and is not "immoral, unethical, oppressive or unscrupulous." *Cambridge Plating Co. v. Napco, Inc.*, 85 F.3d 752, 769 (1st Cir. 1996). The complaint alleges that defendant knew

13

about the new classification codes but based its offer of insurance on outdated codes (which resulted in lower estimated premiums) in order to induce plaintiff to accept its offer over those of other companies and later applied the appropriate codes retroactively to attempt to obtain additional payments from plaintiff. Accepting that characterization as true, the complaint plausibly alleges sufficiently unfair conduct for purposes of chapter 93A to survive a motion to dismiss. Accordingly, the motion to dismiss count 2 of the complaint will be denied.[6]

## IV. Conclusion

For the foregoing reasons, defendant's motion to strike is DENIED and defendant's motion to dismiss is DENIED.

**So Ordered.**

                                                  /s/ F. Dennis Saylor
                                                F. Dennis Saylor IV
Dated: June 23, 2014                                   United States District Judge

---

[6] On the face of the complaint, it appears that many of the events at issue occurred in Pennsylvania. An obvious question therefore is whether the allegedly unfair acts "occurred primarily and substantially within" Massachusetts, as chapter 93A, § 11 requires. Here, defendant would have the burden of showing that the actions did not occur primarily and substantially within the Commonwealth, but has not attempted to make such a showing. Accordingly, plaintiff's 93A claim will not be dismissed on that ground.